Good morning. May it please the court, my name is Kari Hong and I represent petitioner Solomon Mengesha. The BIA committed three notable errors. The first is under matter of brainfurden. The DHS may not charge the same conviction as a deportability ground that it had expressly waived in the previous proceeding as an inadmissibility ground. This doctrine has been in place since the 1990s. It has nothing to do with res judicata. It has nothing to do with IRA-IRA. The Azzurin case decided in 2005 says that it exists after IRA-IRA. Instead, this doctrine was adopted simply because the gap exists between the inadmissibility grounds and it doesn't match the deportability grounds. By regulation and by case law, Congress and the BIA created this doctrine to avoid the absurd situation of having an alien get a waiver to adjust status only to immediately then subject that person to deportability grounds based on the same crime. Mr. Mengesha qualifies for this protection. In 1991, he is admitted as a refugee. In 1993, he was convicted of the attempted rape crime. In 1995, INS commenced the first proceedings, first exclusion proceedings where this was a serious and contested crime. The INS fought hard to have him excluded. The IJ waived the admissibility ground. It was appealed to the BIA who affirmed the waiver. This crime now cannot serve as a deportability ground at a second removal proceedings. Under both Supreme Court and Ninth Circuit law, the BIA cannot depart from its precedent and practice. It can only disavow it. It can't ignore it, which is what happened here. The second error is that there is insufficient evidence to link the factual allegations in the charging documents of both crimes to the ultimate convictions. In the Arizona narcotics offense, the plea agreement expressly recited only, quote, possession of narcotic drugs. Paragraph four. I'm sorry, Counselor, you're referring to the Arizona narcotics offense. Which year is that? That is after 1995. Is that the 98 conviction? Yes, Your Honor. Okay. So the plea agreement recites possession of narcotic drugs. Paragraph four of this agreement expressly provides that any allegations set forth in the plea agreement express, quote, serves to amend the complaint or information without the filing of any additional pleading. In the judgment, the judge makes express findings that Mr. Mangesha possessed, quote, the information then alleging cocaine base was not a part of the plea or judgment. The government argues that a handwritten notation that says COC proves that cocaine, not cocaine base, was involved in the offense. The problem is that there are two versions of the plea agreement, one at 308, one at 310. Mr. Mangesha and his attorney signed the plea agreement before the handwritten notation appeared. Cocaine is not the same as cocaine base, so again, the plea agreement is questionable. And even if it works, the judgment may express findings that the drug involved was simply a narcotic drug and not the actual substance. What does the information provide? Cocaine base. And are under an acceptable analysis of what the court can look at in terms of background documents, the information counts? Well, that is where the court has made very clear distinction between the Ruiz-Vidal and Vidal cases, as well as in the Valdivinos and Cabantac and Coronado cases. The charging document and the allegations contained therein can only be relevant when there's a showing that they were actually linked to the ultimate conviction. In this case, there is no link because unique to Arizona, paragraph four expressly amends and supersedes the allegation. And under this particular plea agreement, the allegation is narcotics. So the factual allegations fully fall out. Well, that's your argument, but I want to make sure we have an underlying predicate established. The information in count one says knowingly possessed or used cocaine base. Correct. Then we get to the plea where the client admits to being pleading guilty to count one. No. He, which is defined in the plea agreement as, quote, narcotic drugs. I understand, counsel, but it refers to count one. Count one of what? Count one of the information. Count one of the information is cocaine base. Yes, Your Honor, but it is amended under the plea agreement and under Arizona procedures because it recites it. It doesn't refer back to that document. Instead, at the top of the page, it says defendant agrees guilty, quote, to count one possession of narcotic drugs. That's very different than the cases in Valdivinos in which there was a complaint of count two. The plea was only to count two. The judgment referred to count two. The men in order was to count two. There was nothing to amend or supersede count two, which is what we do have in Mr. Mingatia's case under Arizona procedures. Well, how does it get superseded under Arizona again? I mean, I was sort of going down the same path as Judge Robert, looking at my notes and then saying no, no, they're referring back to count one as an exception. Under California procedure, under Valdivino it does, but what's different about Arizona is at the top of the plea agreement, it says count one, and then it redefines it as possession of narcotic drugs. This is different than the actual information. Well, stop, counsel. Are you telling me that Cocaine Base has done a narcotic drug under their schedule? No, of course it is. Well, I mean, the general rule is that the specific controls over the general, and now you're saying no, no, no, that we can define it to a more general category and then just asking us to close our eyes to the fact that the plea, the information pleads to narcotic or Cocaine Base. This is, in the California procedure, it says in Did you mean to say California or Arizona? Well, in California, which is at issue at the Valdivino's case, the complaint there said controlled substance to wit methamphetamine, and then the actual plea agreement referred back to count two without any amendments, and that was recorded in the minute order. Under Arizona procedure, it operates very differently. What's different is that although the information identified narcotic drugs, what's significant is that one can still be convicted in Arizona of simply committing the elements of the crime, which is possession of a narcotic drug without specifying what it is. That is why the actual factual allegations in the plea recited only to be narcotic drugs. There's no mention of Cocaine Base at the top of the page, and what's significant is paragraph four is unique to Arizona. It says the agreement serves to amend the complaint or information. And the judgment clarifies that in that it makes the finding a fact where the only drug at issue was, quote, narcotic drugs. Because of this unique procedure in Arizona, he received the benefit of the bargain of not identifying the substance at issue. That's a valid conviction under Arizona, and it doesn't then have the collateral attack or the collateral consequences that a factual allegation of a specific offense would have led to. With the Anderson v. Holder case, are you familiar with that? No, Your Honor. All right. I was going to ask you what state law that applies or arises under, but if you don't know it, that's fine. Would you like me to file a supplemental briefing on that? No. I'll tell you at the end if you need to. Okay. And then under the Oregon attempted rape case, here the final judgment only lists, quote, attempted rape count one. There's no statute listed. There's no minute order. There's no plea agreement. And then the second document is an indictment alleging two counts of the which is 163-375. It does not list the statute of attempted rape. And this is significant because in the Rule 28J letters, Oregon law has a very specific different statute for attempted rape. That is 161-405. Well, but those cases each involve a circumstance where you have two separate crimes. In this instance, you don't have two separate crimes. You have possession of cocaine base, which is then described as narcotic drugs. And, you know, I understand the rationale that you're urging if we can't tell if it's, you know, I don't have the case in front of me, but if it's statutory rape or rape of a minor and we can't tell which it is. But in this instance, your own documentation establishes that it's cocaine base. Oh, I moved on to the Oregon case. Is your question about the Arizona? No. My case is about the Oregon or my question is about the Oregon case. Oregon defines attempted rape and rape as two different statutes. Yes. But the Andrade case has a different specification. And then the Woodson case from 1993 also has a different statute. Well, would you concede, counsel, that when you've got a situation that involves two different crimes, then your argument has some validity? I think my question is when there's no dispute that this is one, in one place it's described as cocaine base, which is then included in the list of narcotic drugs, that that is factually distinguishable and legally doesn't support your position. In the Oregon conviction or the Arizona conviction? In the, you're arguing that Oregon is an example of how we should follow, what we should follow. And that we can somehow, you know, say, well, because they've used different words, then that makes a difference. What I'm saying is it doesn't when you have a statute which tracks to the information. In Oregon, it doesn't. The charging document only lists the statute of rape. The allegations are confusing because it says attempted rape. What's significant in the Woodson case, it's not a hypothetical, but there is a clear what is called a Scribner's error in which the court and the prosecutor make note that the Scribner's error put in the wrong allegations for the substantive crime or for the attempted crime of rape when it should have used the substantive or the allegations for the substantive crime of rape. So under Oregon law, the mistakes are made regarding the allegations. And what's significant is that there's no link provided by the government as to what happened to the second counts, how it is that this went from a substantive crime of rape to the attempted crime of rape. So there's no way to import the factual allegations in that complaint into the ultimate conviction. As another thing unique to Oregon law is that Oregon recognizes when a crime of substantive rape is alleged and then the actual conviction is attempted rape, that if it's not automatically ‑‑ if it's not amended expressly, that the court will then in a jury trial consider the information to be properly deleted and properly amended. So again, the factual allegations under Oregon law for this particular crime are suspect. So the problem in this record is that there's no evidence to show what happened to the two counts, that there's no allegation to show what the allegations of the altered conviction are, and actually what is the statute of the final conviction. Third, as I mentioned before, the Ninth Circuit makes a ‑‑ Why is there nothing to show the statute of the final conviction? The judgment only calls, quote, attempted rape count one. Oh, I'm sorry. The judgment does not list the actual statute, which it does in the Arizona case, for instance. And then as I mentioned before, the third issue is that these evidentiary defects are cases. It was a similar instance in Oregon where it was a different statute that was alleged in the information from the ultimate conviction. That's what we have in Oregon. In my contention under Arizona, we have another ambiguity, which is very different than what we have in Valdovinos and Coronado, in which both the charging documents said to wit methamphetamine. However, the court minutes and the docket and the plea agreement all tie that count to the conviction, which is what we don't have in Arizona. All right. Counselor, well, I've got one more question. One more question for you. Am I correct that your client bears the burden of showing that the 93 offense is not an aggravated felony? Under matter of Rainford, the initial question is that the DHS would have the conviction as to why Rainford doesn't apply. If the allegation is sustained and the court disagrees with me on Rainford, because the government has the burden by proving clear and convincing evidence that this conviction exists. Well, the conviction exists. I want to know if you do. And it is an aggravated felony under the deportability ground. And when it came to the defense of cancellation, he would have that burden, but not for the initial deportability ground. All right. That was going to be my second part. You concede that in terms of cancellation of deportation, you have that burden. The burden shifts. Yes. However, if we win on the first issue, termination is a proper procedure, and we don't get to even meeting that remedy. I understand. Thank you. If there are no further questions, may I reserve the remaining time? Thank you. Good morning, Your Honors. And may it please the Court, I am Rob Stolzer on behalf of the Attorney General. Your Honors, I want to start with removability, because that is the key holding here. If he is removable as charged under both counts, then that ends the inquiry, because he won't be eligible for any form of relief. Let's start with the drug conviction, I think, the first one. Here, the judgment of conviction specifically provides that the offense, it says offense, count one. And that's why we can then turn to count one to see what it said. And count one says cocaine base, which is unlawful both under Arizona law and under the Federal Controlled Substance Act, Schedule II. And that makes him, therefore, removable for the drug conviction. Turning to the rape conviction, which I think consumed a lot of the Court's attention, we think he would be removable on that alone, correct? He would be removable on that alone. In other words, if we didn't get to the rape conviction and we agreed with you on the cocaine base conviction, then he would be removable? Then he would be removable as charged. Yes. And then that's what my colleague, Petitioner, was talking about, how then the burden would switch to Petitioner to show that he was eligible for some form of relief. If for some reason the Court didn't uphold also the rape charge of removability, which we urge you to do, for the same reasons, because the judgment of conviction specifically says attempted rape one, count one, we can then turn to the indictment which describes it to let us know that it matches the Federal generic definition of rape and, therefore, would make him removable for the attempted rape under the aggravated felony definitions of the INA. I was actually slightly more interested in the argument that she made, that the waiver on this conviction for admissibility means you can't now use it for removability. Absolutely. I should address that, Your Honor. And that's the one that tripped me up in terms of whether, in fact, that conviction falls out for that reason. Sure. Matter of Rainford does not apply, and I will explain why that is the case. Matter of Rainford was confronting the situation that you've described where he was simultaneously inadmissible. Excuse me, he was admissible to be adjusted. He could get adjustment, but then he would automatically become deportable. And the Board looked at it and said, well, no, no, no, Congress could not have intended both of those things to be true at the same time. Now, that isn't the case that pertains here, because when he adjusted status, he wasn't automatically made deportable, right? The deportability ground that we're talking about here or, excuse me, the removability ground we're talking about here came along later in I.I.R.A. when Congress changed the law to make rape or, and attempted rape, aggravated felonies under the aggravated felony definitions. So this case is very distinguishable from Rainford. It's not the same procedural posture, and it's not the same legal posture, because like I said, there wasn't that weird contradiction where he could be adjusted or the Rainford applicant could be adjusted and also immediately deportable. That's not what happened here. Kagan. I'm sorry. On his situation, when they waived this with respect to admissibility, that just then puts him in that status at that point, and there's no basis at that point to remove him. Correct. Is that correct? Correct, Your Honor. So he's then here as a certified refugee, if that's the appropriate term. Yes. He became a lawful resident when he adjusted. And thereafter is subject to all the normal deportability grounds of all of the other lawful residents if they commit crimes in the future or in some other way commit a violation that makes them deportable, excuse me, removable from the United States. Right. So in other words, the waiver on the admissibility, waiver of the conviction for admissibility purposes in effect was sort of a one-time pass? It was a one-time, yes. It was a one-time pass. And I want to point out that it also applies only as a waiver to a ground of an admissibility. It doesn't delete the conviction for other immigration purposes. That conviction still exists, which is why we can come along later and say, okay, now you've fallen afoul of the aggravated fouling definitions and you're removable for that. I want to add, Your Honors, even if you found that he wasn't removable for that, for some reason applying Rainford or I'm not an unusual application, in the abstract, Your Honor, if you were to find that he wasn't removable as charged for the rape conviction, it would still be an aggravated felony that makes him ineligible for asylum, for withholding, for cancellation of removal. Because, again, the conviction still exists. The waiver applies only at the – the waiver in 1994 applied only to the ground of an admissibility. The conviction still exists for the purposes of deciding whether he's eligible for relief later, which, of course, they look here and say, well, this is an aggravated felony and you are therefore ineligible for asylum, for withholding, for cancellation of removal. So he – and there's – he wouldn't have any other options than – Not that he pleaded below and not that I'm aware of either. In terms of relief. No. Below, he sought asylum, he sought withholding, which I believe he's abandoned on appeal by failing to argue it, and he sought cancellation. And they were denied below because of the existence of the aggravated felony crime of attempted rape. I understand. Thank you. Just real quick, Your Honors. With respect to the cocaine conviction, I want to point out there was some disagreement about the record as to which plea agreement the Court should notice or should rely on. I want to point the Court's attention to page 308 of the record. This is the page that lists the 2.4 grams of COC, whatever it is. If you'll direct your attention to the upper right-hand corner of that page, you will also find the stamp of the clerk of the court indicating that this was the plea agreement that was filed. The other one, which appears two pages later, doesn't have the seal of the court. So if we even get to the plea agreement, which I don't think we need to because the conviction document points right to the count. But if we even needed to get to the plea agreement, this is a judicially reliable document. It bears the seal of the clerk of the criminal court on it. And from that, we can determine that he was removed – excuse me, he was convicted pursuant to a drug that is on the Federal schedule, which – if there are no other questions, Your Honor, I won't belabor the point. Thank you. Thank you. Thank you. I have two quick points. The government cited no authority for its interpretation of Rainford because it's completely wrong. Matter of Balderas at 392 and 393 are precisely on point. There were two separate proceedings, one in 1989, one in 1990. In 89, two convictions were waived. In 1990, the INS recommenced proceedings relying on one of the convictions that was waived. The BIA said, we took care to recognize that once a waiver was granted, it's granted to deportability. It says that it reflects our concern that once granted, it should remain valid indefinitely for all proceedings, including deportation and exclusion proceedings. It does not operate the way that the government said. What – I get your argument, but one thing I'm concerned about, counsel just made the point that even if you grant your argument about waiver, nonetheless there is a conviction, which is an aggregated felony, it's still there, and that that in and of itself pursuant, I gather, to the statute remains a bar to much of what your client may be seeking. What's your response to that? Balderas answers that precise question. It says it disappears for purpose of alleging these grounds and commencing proceedings. It becomes relevant in the exercise of discretion. So it is not a bar. However, the IJ can still look at it when it comes to the discretion of asylum and cancellation. In other words, it's not, if you will, bad term, categorical exclusion, but when the attorney general exercises discretion, that can be considered. Yes, Your Honor. And then the second issue, the government is not clear, again, whether the issue is cocaine or cocaine-based. He said that we should look to a plea, which then has a handwritten notation of cocaine. The allegation says, or the information says cocaine-based. The government's confusion over the documentation is only resolved by looking at paragraph four, which amends it to narcotics, which is the only drug which is found by clear and convincing evidence on this record. If there are no further questions, I wish to submit the case. All right. Thank you. All right. Thank you. Thank you both for your argument and your patience in awaiting the end of the calendar. We are now adjourned. ?? ??
judges: Robart, McKeown, Smith